## THE RUTH KELLOGG.

### KELLOGG S. S. CORPORATION v. BELCHER OIL CO.

No. 9922.

Circuit Court of Appeals, Fifth Circuit.

Feb. 23, 1942.

Otto C. Stegemann, of Miami, Fla., Carver W. Wolfe, of New York City, and Jos. M. Rault, of New Orleans, La., for appellant.

M. Lewis Hall, of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The libel was for bottom damages to the tank steamer, Ruth Kellogg. The claim in general was that they were the result of grounding in an unsafe berth designated and furnished by respondent charterer, in violation of a charter party covenant that the vessel should safely lie afloat. Specifically, the claim was: that, while being piloted to the dock, assisted by tugs, she went aground about 50 to 70 feet off, with her port side parallel to the dock and a 2 to 3% list to starboard; that the tugs, with the assistance of the vessel's lines, managed to shove her within about 20 feet of the dock; and that she lay there aground, her starboard bottom resting on some hard substance, from approximately 7:30 in the morning to 3:00 in the afternoon. The defense was a denial that the vessel grounded and was damaged as claimed and, on the issue so joined, evidence was taken by deposition and orally before the court.

The trial judge found (1) that the Ruth was not aground about 75 to 100 feet from the dock as claimed and that her starboard bottom was at no time aground in respondent's berth; (2) that on the day before the berthing, the vessel struck a submerged object in the channel, and part of the claimed damage could have been the result of that striking; (3) that in December, 1937, some months after the berthing, she experienced heavy weather which could have caused the balance of the damage sued for; and (4) that libellant had failed to sustain the burden of showing that any of the claimed damage had resulted from the failure of the respondent to furnish a safe berth as required in the Charter Party. So finding he dismissed the libel.

Libellant here by appeal, fully recognizing its burden to convince us that the findings and decree may not stand, insists that an examination of the findings in the light of the record, will demonstrate that they are unsupported by the evidence and that the decree should be reversed. We recognize the correctness of the rule invoked by appellant and uniformly followed by the court, that though we accord them due weight, we are not bound to accept the findings and judgment of the district judge. We must examine the record and determine for ourselves, whether it fairly supports them. A careful study of the record reveals that the difficulty with libellant's case is that which, confronting

the libellant in The Alabama and The Brandywine, D.C., 280 F. 738, caused a reversal on appeal of a finding of bottom damage, 5 Cir., 288 F. 170, 173. This difficulty is that a finding that there was a grounding and damage here must rest not on direct evidence that it occurred, but on an inference from the fact that bottom damage was later found and that all other causes of it were rigidly excluded. When, as here, in addition to that primary difficulty, libellant comes to the court with findings against him on evidence which to say the least of it, furnishes some support for them, his burden is difficult indeed. Particularly hurtful to libellant's case is the fact that no notation was made in the log book, nor was any claim made at the time, of the claimed grounding on rock or other hard substance or that any damage had occurred. It was only when, six months afterward, the vessel went on dry dock and damage to some of her plates was found, that libellant, searching back over the intervening months for the cause of it and remembering the difficulty of getting into the berth, decided that the damage might have occurred then and made claim accordingly. As in the Alabama case, no notice was given or claim made by the "Ruth" of injury at the time. As in that case, "The testimony of her officers, when sifted, is only to the effect that they do not know of any other grounding of the Alabama between the times of her being in the dry dock." In addition, there is against libellant here, as there was not there, the testimony of Spiva and others about the striking of a submerged object in the channel, the admitted fact of heavy weather damage, and testimony denying both that there was a grounding and that there was a hard bottom in the berth. Opposed too, to the testimony of libellant's experts that the damage to the plates was characteristic of bottom damage and reasonably pointed to a grounding such as libellant claims, is the testimony of respondent's expert witnesses, that the injuries found to the plates could have been and in all reasonable probability were, caused by the heavy weather, or the striking of the submerged object or both. Finally, in this situation of permissible inferences from the testimony, with the burden on libellant at least to make the inferences drawn in its favor seem more reasonable than those drawn against it, libellant with no better evidence than, indeed with evidence not as good as, the Alabama had, finds itself in the hard and undefendable position here of having the findings of the district judge not for its claim, as in the Alabama case, but against it.

To set out the testimony would serve no useful purpose. It is sufficient to say that while it might support a finding in appellant's favor and if one had been made we might not disturb it, it certainly does not demand one nor does it furnish a basis for our setting aside the district judge's findings as findings with which we cannot agree, his decree as one which should not stand.

Affirmed.